# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DIANA PITTMAN-HAWKINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-10-470-SPS |

## OPINION AND ORDER

The claimant Diana Pittman-Hawkins requests judicial review of the Social Security Administration Commissioner's decision denying her application for benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v.Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 28, 1960, and was forty-nine years old at the time of the administrative hearing. She has a twelfth grade education and past relevant work as a bus driver, housekeeper, and babysitter. (Tr.19, 24). The claimant alleges that she has been unable to work since June 25, 2007 due to reflex sympathetic dystrophy (RSD) in her right hand, broken fingers, a right leg and knee injury, severe depression, and fibromyalgia. (Tr. 140).

## Procedural History

On February 12, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Kim Parrish conducted a hearing and determined that the claimant was not disabled in a decision dated September 9, 2009. The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (chronic rhinusitis and depression) but retained the

residual functional capacity ("RFC") to perform work light work as defined in 20 C.F.R. §§404.1567(a); 416.967(a), with frequent handling and the ability to frequently pick up, pinch, and otherwise work with her fingers. (Tr. 13). The ALJ concluded that while the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national economy, *i.e.*, general clerk, maintenance dispatcher, and rental clerk. (Tr. 19-20).

## Review

The claimant contends that the ALJ erred in her analysis of the medical evidence of record, including the opinions of Dr. Martens, Dr. Halko, Dr. Fiegel, and Dr. Hartley. The Court finds merit in the claimant's argument.

On August 2, 2007, the claimant underwent right long finger proximal interphalangeal volar plate arthroplasty, right long finger proximal interphalangeal capsulectomy (volar and dorsal) and right ring finger proximal interphalangeal manipulation in order to treat a right long finger chronic proximal interphalangeal fracture dislocation and right ring finger proximal interphalangeal contracture. (Tr. 217-18).Following the procedure, Dr. Halko, who also performed the claimant's surgeries, routinely recommended that claimant's activity be limited with regard to her right hand ranging from no use at all to permanent restrictions of ten pounds lifting, carrying, pushing, and pulling. (Tr. 225, 227, 229, 231, 233, 236, 242-49). Dr. Halko also assessed a 20% permanent partial impairment to the claimant's right hand. (Tr. 237).

Following her surgery, the claimant participated in rehabilitation at Red River Rehab Outpatient Clinic, where she was treated by Donna Edge, O.T.R/L. In October 2007, Ms. Edge noted that claimant reported that her hand was stiffening after 10-30 minutes of therapy and her pain was estimated to be an 8 of 10. (Tr. 292). Through the use of an edema glove and gutter splint, Ms. Edge noted that the claimant's "symptoms are being kept at bay, but [they are] not showing any current signs of decreasing. (Tr. 292). On January 2, 2008, Ms. Edge wrote that she had treated the claimant 38 times, and that after several weeks of therapy, the claimant "began showing signs of improvement . . . but pain continued to be a problem." (Tr. 288). Further, the claimant was managing her pain with edema pressure gloves, medication, and heat. (Tr. 288).

The claimant was evaluated by Dr. Hugh G. McClure for an independent medical examination for her hand injuries on February 6, 2008. Dr. McClure noted Dr. Halko's ten pound restriction for the right side and wrote that it was his opinion that "she would not be able to return to any type of work duties" because of pain, loss of normal range of motion of the right middle and right fingers, loss of strength, and loss of function of the right hand. (Tr. 319). Dr. McClure further opined that the claimant suffered from the following impairments: i) 100% permanent partial impairment to the right middle finger; ii) 93% permanent partial impairment to the right ring finger; iii) 75% permanent partial impairment to the right hand; iv) 20% permanent partial impairment to the left hand; and v) 48% permanent partial impairment to the body as a whole due to the bilateral injury to the hands. (Tr. 314-22).

State reviewing physician Dr. Thurma Fiegel, M.D. completed a Physical Residual Functional Capacity Assessment. Dr. Fiegel found that claimant would be capable of occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing and/or walking about six hours in an eight hour workday, and sitting for about six hours in an eight hour workday. (Tr. 419). Dr. Fiegel wrote that claimant would be unable to use her right hand and arm, and that her ability to push and pull would be limited in her upper extremities. (Tr. 419). Finally, Dr. Fiegel found that claimant would be limited in her ability to reach, handle, finger, and feel. (Tr. 421). Curiously, Dr. Fiegel wrote that none of her findings were significantly different from Dr. Halko's findings. (Tr. 424).

Finally, Dr. Greg Martens, D.O. completed a Physical Residual Functional Capacity Questionnaire and noted both that he had treated claimant for over three years and that claimant had been diagnosed with reflex sympathetic dystrophy. (Tr. 488-92). Dr. Martens opined that claimant would be able to sit and stand/walk for less than two hours during an eight-hour workday, that she would need a position which would allow her to shift positions at will, and two to three hour breaks on a weekly basis during the workday. (Tr. 491). Dr. Martens also found that claimant should only rarely lift up to ten pounds and only occasionally look down, turn head to the right or left, and look up. (Tr. 491). Dr. Martens also assigned the following limitations: i) occasionally stooping; ii) rarely twisting, crouching/squatting, and climbing stairs; and iii) never climbing ladders. (Tr. 491-92). Finally, Dr. Martens wrote that claimant would be significantly limited in her ability to reach, handle, and finger. (Tr. 492).

"An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion." *Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). The ALJ analyzed the opinion of Dr. Martens, but failed to analyze any of the other opinions of record. For instance, the ALJ failed to evaluate the treating physician opinion of Dr. Halko that claimant was permanently restricted to no more than ten pounds lifting, carrying, pushing, and pulling with her right hand. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (noting that a medical opinion from a treating physician is entitled to controlling weight if "'the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

The ALJ also failed to properly consider the opinion of Dr. McClure regarding the limitations imposed by claimant's impairments in both her right and left hands, *i. e.*, the ALJ summarized some of Dr. McClure's findings but neglected to discuss the parts of his opinion that quantified the effect of claimant's hand impairments. While Dr. McClure may not have been an "acceptable medical source" under Soc. Sec. Rul. 06-03p, the ALJ was nevertheless not entitled to simply ignore his opinions regarding the severity of

claimant's impairments and their corresponding functional effects. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "'on key issues such as impairment severity and functional effects'" and by considering the 20 C.F.R. §§ 404.1527, 416.927 factors in determining the weight of these opinions), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *3-4. Thus, the ALJ should have discussed Dr. McClure's opinion as to the claimant's functional limitations and explained the weight he assigned to said opinion. *See generally* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (discussing considerations of evidence from sources who are not acceptable medical sources and stating that "[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning") [emphasis added].

Because the ALJ failed to properly analyze the medical evidence of record, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma